HOLT COUNTY BANK, PLAINTIFF IN ERROR, V. TOOTLE, LIVINGSTON & CO., DEFENDANTS IN ERROR.

Real Estate: SALE: CHATTEL MORTGAGE ON BUILDING: CON-VERSION BY VENDEE. F., being the owner of a vacant village lot, sold it to G. at the price of $125, twenty-five dollars of which sum was paid down, and two payments of $50 each, with interest, to be paid at agreed times. The sale was evidenced by a written contract executed and delivered by F. to G., but was not recorded. G. took possession of the lot and built a house

thereon, which she occupied as a store and dwelling. G. executed a chattel mortgage of said house to T., L. & Co., to secure a debt which she owed them, which was recorded. Afterwards G. executed two mortgages of the lot to the bank, to secure two debts which she owed it, which were recorded. T., L. & Co. foreclosed their chattel mortgage, sold and bought in the house. Afterwards, and simultaneously, as appears, the bank received actual notice of the chattel mortgage, its foreclosure, and the purchase of said lot by T., L. & Co., and in consideration of the two mortgages held by the bank, and of a certain mechanic's lien that the bank held against said property, G. executed to the bank a q. c. deed of the property, and assigned to it the Fitzgerald contract. The bank sold the lot and house to S., and put him in possession. Afterwards, the bank tendered to F. the amount due on the contract, and demanded a deed, which was refused, on the ground that said contract was forfeited for non-payment of the purchase money. The bank finally, by the payment of fifty dollars additional, obtained a deed from F. In an action by T., L. & Co against the bank for the value of the house, *Held*, That the plaintiffs were entitled to recover the value of the house, less the amount of the mechanic's lien held by the bank.

ERROR to the district court for Holt county. Tried below before TIFFANY, J.

*Adams & King* and *Uttley & Benedict*, for plaintiff in error, cited: Jones on Chattel Mortgages, Sec. 129. *Smith v. Waggoner*, 50 Wis., 155. *Richardson v. Copeland*, 6 Gray, 536. Washburn Real Prop., Vol. 1, 3. *Ottumwa Woolen Mill Co. v. Hawley*, 44 Iowa, 57. *Adams v. Beadle*, 47 Iowa, 439. *Sowden v. Craig*, 26 Iowa, 156. *Richardson v. Copeland*, 6 Gray, 536. *Dostal v. McCaddon*, 35 Iowa, 318. *Teaff v. Hewitt*, 1 O. St., 511. Jones on Chattel Mortgages, Sec. 132. Wade on Notice, 2 Ed., Sec. 273.

*D. A. Holmes* and *Thos. Carlon*, for defendants in error, cited: Jones on Chattel Mortgages, Sec. 129. *Ford v. Cobb*, 20 N. Y., 344. *Myrick v. Bill* (Dak.), 17 N. W. Rep., 268. *Corcoran v. Webster* (Wis.), 6 N. W. R., 513.

*Raymond v. Morrison,* 13 N. W. R., 332.    *Wightman v. Spofford,* 8 N. W. R., 680.

Cobb, J.

This cause comes to this court on error from the district court of Holt county.    The following *résumé* of the pleadings is taken chiefly from the brief of plaintiff:

On or about Nov. 14, 1883, one Bridget Gorman, or Mrs. J. E. Gorman, as she is also known, bought of John Fitzgerald a certain lot in the village of O'Neill, under a contract by the terms of which $25 was paid in cash, $50 was to be paid on July 14, and $50 on Nov. 14, 1884, with the consideration, however, that if the said Bridget Gorman should fail in any of such payments the vendor might elect to declare said contract void, and the same might upon said election be treated as void, and the lot, together with all the buildings and improvements thereon, revert to him without any notice or public declaration of said election.

The contract was not at this time recorded.    Pursuant to the terms of said contract, said Bridget Gorman took immediate possession of said lot, and erected thereon a building, which was in a great measure erected and joined with the building on the lot immediately adjoining the same.    Both buildings were constructed at the same time, and though the frames were built separately, they were so closely joined together that no siding or other covering was placed upon either of them on the outside between the two, and except for the lath, plastering, and studding there was nothing between them.    The roofs were separate, but met at the eaves, and were joined together by a tin gutter.    The fronts were so sided together that from that side the two had the appearance of but one building, no attention being paid to the point of separation in putting on the siding.    The whole structure rested upon

brick piers.    The building so erected by said Bridget
Gorman was, upon its completion, at once occupied by her
as a store room and dwelling-house.

On or about October 10, 1884, the said Bridget Gor-
man, being indebted to plaintiff in error in the sum of
$294, executed and delivered to it a real estate mortgage
upon said lot to secure the payment of that sum, and on
or about December 13, 1884, she, being indebted to plaint-
iff in error in the additional sum of $308, executed and
delivered to it a second mortgage upon the lot to secure
the payment of that sum.

Prior to this time a lumber firm, Barnett & Frees, had
furnished to said Bridget Gorman lumber and material
which entered into the erection of said building, to the
amount of $185, for which she was still owing them, and
they had perfected a mechanic's lien on said building for
said amount.

On December 17, 1884, the plaintiff in error assumed
the payment of said mechanic's lien, and in consideration
of it assuming the payment of said lien, and the further
consideration of the two sums secured to it, as above
stated by real estate mortgages, said Bridget Gorman as-
signed to it the contract which she had taken from the said
Fitzgerald, and also executed and delivered to it a quit-
claim deed for the premises.

On the same day plaintiff in error tendered to the said
Fitzgerald the balance of the purchase money for the
lot, and demanded of him a warranty deed for the prem-
ises, as provided in the contract, at which time the said
Fitzgerald refused to execute the deed, and assigned as his
reason therefor, that the contract had already been for-
feited by reason of the non-payment of the purchase
money as provided in the contract, and then said Fitzger-
ald agreed to and did sell said lot to plaintiff in error
for the consideration of said unpaid purchase money and
an additional sum of $50.    The said sale was made at

that time, but the deed was not executed by said Fitz-gerald therefor until some time in the winter or spring of 1885. On the 30th day of January, 1885, plaintiff in error conveyed said lot by warranty deed to one R. E. U. Spargur.

Defendants in error commenced this action in the district court against plaintiff in error for the conversion of said building, claiming to be the owner of said building by virtue of the foreclosure of a chattel mortgage given to defendants in error on said building by said Bridget Gorman in April, 1884, for the sum of $198.75; which mortgage was filed in the office of the county clerk, as is provided for the filing of chattel mortgages; and defendants in error claimed to have sold said building at a foreclosure sale on the 14th day of February, 1885, at which pretended sale defendants in error became the purchasers of said building; but said building was never removed from the lot on which it stood, nor in the possession of defendants in error in any manner or form whatever, and plaintiff in error never had any actual notice of the existence of said chattel mortgage until after its purchase of the property from the said Bridget Gorman and said Fitzgerald.

In addition to the above facts, it was also set out and stated in the answer of the defendant, in its eleventh ground of defense, that, on the 15th day of December, 1884, the said Mrs. Bridget Gorman quit-claimed all her right, title, and interest in and to said premises to the defendant, including said building described.

There was a trial to the court, a jury being waived, with findings for the plaintiffs, "that on April 15, 1884, Mrs. J. E. Gorman, otherwise known as Bridget Gorman, the same person, then being the owner of and occupying one certain frame building, used as a residence and store building, situated on lot 25 in block 22 in the village of O'Neill, Holt county, Nebraska, the legal title to said lot

then being in John Fitzgerald, Mrs. Gorman holding a contract for a deed to be delivered on payment of certain installments mentioned therein, said contract never having been filed of record in the county clerk's office of said county, executed and delivered to the plaintiffs her certain promissory note for $196.75, with interest at ten per cent per annum, and to secure said note executed and delivered to the plaintiffs a chattel mortgage upon said building, which was duly filed in the county clerk's office of said county, on April 16, 1884, said note maturing six months after date.

"I.   The court finds that, on or about January 1, 1885, default having been made in the conditions of said mortgage, the same was duly and legally foreclosed, as by law required, and that the plaintiffs became the purchaser and owner of said building, at the foreclosure sale thereof, for the sum of $210.

"II.   The court further finds that, subsequent to the delivery of the foregoing note and mortgage, to-wit, on Oct. 10, 1884, Bridget Gorman, to secure $294 by her owing to the defendant, executed and delivered to the defendant a mortgage deed upon said lot, and her promissory note at ten per cent interest, which mortgage was duly filed October 21, 1884, in the records of real estate mortgages in the county clerk's office of said county.

"III.   The court further finds that, on or about December 13, 1884, Bridget Gorman made and delivered to the defendant another mortgage deed upon the said lot, and her note to secure to the defendant $308, at ten per cent interest, which mortgage was, on December 12, 1884, duly filed for record in the county clerk's office of said county.

"IV.   The court further finds that the firm of Barnett & Frees furnished lumber and materials used in the erection of said building to the amount of $185, for which they acquired a valid mechanic's lien on said building and lot,

in accordance with the laws of this state, which was to draw interest at ten per cent per annum from July 25, 1884.

"V.  The court further finds that, on or about December 17, 1884, the above lien of Barnett & Frees was duly assigned to the defendant, and that they became the owners thereof; and that on said date Bridget Gorman, in consideration of the assuming by the defendant of the payment of said mechanic's lien and satisfaction of the mortgages before executed to the defendant for $308 and $294, respectively, assigned and delivered to the defendant the contract for a deed which she held from John Fitzgerald for a title to said lot, and executed and delivered to the defendant a quit-claim deed of all her right and title thereto.

"VI.  The court finds that up to December 17, 1884, the defendant had received no notice of the existence of the plaintiffs' mortgage upon said building, except constructive notice by the filing of said chattel mortgage in the county clerk's office of said county.

"VII.  The court further finds that, on or about December 17, 1884, the defendant tendered to John Fitzgerald the balance due upon said bond for deed, and demanded a deed for the said lot, which was refused, for the reason that there had been default made in the conditions of said bond; that at the same time said Fitzgerald agreed to accept an additional sum of $50, and make the deed to the said lot.

"VIII.  The court finds that this agreement between John Fitzgerald and the defendant was oral.

"IX.  The court further finds that, on or about December 17, 1884, the defendant received from the plaintiffs' attorneys actual notice of the lien of the plaintiffs by virtue of the chattel mortgage.

"X.  The court further finds that, sometime in the month of March, 1885, the defendant paid to John Fitzgerald the balance due upon said contract for deed, including the $50 additional agreed upon December 17,

1884, and received from him a warranty deed for said property.

"XI.    The court further finds that the defendant made final payment and received the deed from said John Fitzgerald, subsequent to having actual notice of the existence of plaintiffs' lien, and after the foreclosure and sale of the property under said mortgage.

"XII.    The court further finds that the building herein referred to was placed upon said lot by the said Mrs. J. E. Gorman under the said contract in writing, marked "Exhibit A," in defendant's answer.

"XIII.    The court finds that said building was a frame building, one and one-half stories high, set upon a foundation of brick piers.    That it was by mutual consent and agreement with the owner of the adjoining lot built adjacent to the building on said adjoining lot, but with separate rows of studding, but not sided; that the sheeting and siding on front of said building were joined so as to make one uninterrupted and unbroken front to the two buildings, and which could easily be sawed apart, and that the two buildings were at the eaves connected by tin gutter.

"XIV.    The court finds, however, that the buildings were capable of being moved one from the other without serious injury to either.

"XV.    The court finds that, at the time of the execution and delivery of the chattel mortgage to the plaintiffs, there was nothing of record showing title to the lot in Bridget Gorman; that she, at the time of the execution of the mortgage, expressly declared the building to be her personal property, and treated it as such; and the court finds that such building was susceptible of being by the acts of the parties made personal property.    The court finds that the plaintiffs herein never took actual possession of the said building or in any way attempted to remove it from the lot.

"XVI. The court further finds that the defendants converted said lot and appurtenances by good warranty deed to their own use, by conveying the same to R. E. W. Spargur, and that the value of the building at the time of such conversion was $575.

"XVII. The court finds, as a matter of law, that the mortgage executed and delivered to the plaintiffs, as above described, was a valid, subsisting, and legal lien against said property.

"XVIII. The court further finds, however, that the mechanic's lien of Barnett & Frees was a prior lien upon said building to the lien of said mortgage.

"XIX. The court finds that the defendants, at the time of the taking of their mortgage upon said property, were bound by the records of filing said chattel mortgage in the clerk's office of said county.

"XX. The court further finds that the defendants, by virtue of the assignment of the contract, and the quit-claim deed from Mrs. J. E. Gorman, took only such title as she at that time possessed.

"XXI. The court finds that the plaintiffs should recover from the defendant the value of said building, $575, together with interest from February 15, 1885, less the mechanic's lien of Barnett & Frees, which has been duly assigned to the defendant, of $185 and interest from July 25, 1884, at ten per cent per annum, with judgment for the plaintiffs for $461.40 and costs."

The defendant's motion for a new trial having been overruled, the cause was brought to this court on error by the defendant, who makes twenty separate assignments of error, which, as I shall scarcely go beyond the purview of some one of them in this opinion, I deem it unnecessary to set forth at length.

It appears from the record that Mrs. Gorman, having purchased this lot from Fitzgerald and entered into a contract with him expressing the terms of such purchase, that,

the price was $125, with payment down of $25, with two
later payments provided for of $50 each, with interest,
and in which contract it was expressed that the lot was
sold for building purposes, and in which Mrs. Gorman
agreed that no building which she should place on the lot
should be removed or destroyed, but which contract had
not then been placed upon the public record, she executed
to the plaintiffs a chattel mortgage on the building already
erected, to secure the payment of her note to them of
$196.75, due six months after date. The mortgage was
afterwards foreclosed by plaintiffs, the property was sold,
and bid off by themselves. Afterwards, on October 10,
1884, Mrs. Gorman executed and delivered to the defendant
a real estate mortgage on said lot to secure $294, which was
duly recorded; that on December 13, 1884, Mrs. Gorman
executed and delivered another mortgage on the lot to
secure the payment of her other note of $308. It fur-
ther appears that, to the mechanics who had built her
house, there was due from Mrs. Gorman for labor and
material furnished, $185, for which a mechanic's lien
thereon was duly entered against the property, and which,
on December 17, 1884, for value received, was duly
assigned to defendant. It also appears that, up to Decem-
ber 17, 1884, the defendant had received no actual notice
of the making or existence of the chattel mortgage men-
tioned, or any notice thereof other than the constructive
notice implied from the record in the county clerk's office
of the county, but it appears that on or about December
17, 1884, the defendant had actual notice from the plaint-
iffs of the chattel mortgage. It also appears that, on
December 17, 1884, Mrs. Gorman, in consideration of the
assuming by the defendant of the payment of the me-
chanic's lien and the satisfaction of the mortgages executed
by her to the defendant, duly assigned to defendant the
contract for a deed from John Fitzgerald for the lot, and
executed and delivered to the defendant her quit-claim

deed conveying all her right and title thereto. It further appears that, on or about December 17, 1884, defendant tendered to John Fitzgerald the balance due on said contract for deed, and demanded a deed, which was refused on the grounds that the conditions of the contract were forfeited. Defendant afterwards, by special contract and the payment of an additional sum of money to Fitzgerald, received a deed from him for said lot.

I do not deem it important to follow counsel in all their lengthy and somewhat involved argument as to the effect of defendant's real estate mortgage and the mechanic's lien which it acquired, of the chattel mortgage of plaintiffs, or of their respective effect one upon the other. Had Mrs. Gorman owned the lot, as well as the building, she could doubtless have executed a mortgage upon the building alone, which would have been valid against it, as a chattel, so far as she was concerned. But she did not own the lot except in a qualified sense. The title was in another, to whom she had become bound not to remove or destroy any building which she might cause to be erected on the lot.

But for aught that appears, the plaintiffs below were ignorant of the terms of this contract; nor does it appear that they had any knowledge or notice that she had any permission of the owner to erect the house thereon. With the outstanding contract with Fitzgerald against her, in which, as we have seen, she was bound not to remove or destroy the building, she gave to the plaintiffs the chattel mortgage, which in effect authorized and empowered them, in case of default of the payment of the money secured by the mortgage, to remove the building from the lot for the purpose of foreclosing the mortgage. The defendant having no legal notice of the terms of this contract, for I think that the filing of the chattel mortgage was not a legal notice to it, at the time of the execution of its first and second mortgages, was not bound by the contract of the chattel mortgage.

I do not doubt that, as matters then stood, the bank could have foreclosed its mortgages on the property, in connection with the mechanic's lien which it had acquired as the first lien thereon. But instead of doing so and seeking to perfect its original liens, and insist upon their priority over the chattel mortgage, it preferred to take a quit-claim deed for the lot from Mrs. Gorman. This invested it with all her right and title to the lot, including the building thereon, but, in my view, it also invested it with the duties and obligations under which she rested, in respect to the building, toward the plaintiffs, of which it is assumed, from the evidence and findings, the defendant had notice at the date of the quit-claim deed.

It will hardly be contended that, in respect to the chattel mortgage, the defendant could claim to stand in the attitude of an innocent purchaser without notice. If it otherwise could, that avenue of escape must be considered as closed by its acceptance of the quit-claim deed by Mrs. Gorman. Neither can the defendant ignore its title by quit-claim deed by Mrs. Gorman, and claim to take title by Fitzgerald, freed from all former entanglements. Mrs. Gorman, at the commencement of these proceedings, was in possession of the lot as owner. She had paid no inconsiderable amount of the purchase money, and had made valuable improvements thereon. The defendant treated her as owner, by accepting two mortgages on the property, and again, by accepting her deed for the lot. And it was a matter of choice on the part of defendant that, after receiving an assignment of the contract from Mrs. Gorman, the defendant treated with Fitzgerald as though the contract was forfeited, and made new terms with him. As the assignee of the contract in possession, no forfeiture of it having been declared or published, the defendant had the option to go into court for relief upon tendering the amount of principal and interest due on the contract, or to pay

Fitzgerald the amount in addition thereto which he demanded and received. In following the latter course, it doubtless chose the cheapest one, though the other was equally sure.

With these views of the premises of the case, and from a careful consideration of the evidence, which fairly sustains the findings and judgment of the court below, I reach the conclusion that the judgment ought to be affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.